# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 25-1086**

**September Term, 2025**

FILED ON: JUNE 9, 2026

MUNICIPAL ENERGY AGENCY OF NEBRASKA, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

XCEL ENERGY SERVICES INC.,
INTERVENOR

---

Consolidated with 25-1111

---

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

---

Before: SRINIVASAN, *Chief Judge*, GARCIA, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

## J U D G M E N T

This cause was considered on the record, the briefs of the parties, and oral argument held on January 13, 2026. The court has given the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the petitions for review be **DISMISSED** in part and **DENIED** in part.

\* \* \*

The Municipal Energy Agency of Nebraska, a not-for-profit wholesale electricity supply organization that provides power and energy-related services to dozens of participating municipal

communities in Colorado, Iowa, Nebraska, and Wyoming, and three Colorado cities – Aspen, Glenwood Springs, and Center ("the Colorado Cities") – are customers of the Public Service Company of Colorado ("Public Service"), an electric utility. The Colorado Cities object to Public Service's decision to raise rates to fund a new infrastructure project, the "Power Pathway," from which the Colorado Cities assert they will reap no benefits. The Federal Energy Regulatory Commission ("FERC") denied the Colorado Cities' complaint challenging the increased rate. The Colorado Cities then filed petitions for review with the court. The Colorado Cities argue that FERC's decision was arbitrary and capricious because the agency failed to make two findings that were necessary to support its orders in favor of Public Service. We disagree. First, the court lacks jurisdiction to evaluate whether FERC made the first finding because the Colorado Cities failed to raise this issue in their petition for rehearing before the agency. Second, the Colorado Cities' claim as to the second finding is at odds with the record, so the claim offers no basis to support the petitions for review.

## I. BACKGROUND

The Federal Power Act requires that electric utilities set rates that are "just and reasonable." 16 U.S.C. § 824d(a). The "just and reasonable" standard includes a "cost-causation principle" pursuant to which "[a]ll approved rates must 'reflect to some degree the costs actually caused by the customer who must pay them.'" *City of Lincoln v. FERC*, 89 F.4th 926, 930 (D.C. Cir. 2024) (citation omitted). When utilities raise rates to fund system improvements, it is "just and reasonable" to allocate the cost of improvements among all network customers, regardless of how directly they benefit from the improvement, so long as the system is an integrated network. This is called "rolled-in" rate treatment. *See, e.g.*, *Algonquin Gas Transmission Co.*, 47 FERC ¶ 61,048, 61,154 (1989) ("[The] Commission . . . ha[s] followed a long-standing policy of rolling in costs where a system operates on an integrated basis to the benefit of all its customers."). However, rolled-in rate treatment may not be appropriate when certain "special circumstances exist," for example when lines are built in "remote areas that serve limited customers," where transmission facilities could not "transmit power on a system-wide basis," or for "customer-specific distribution facilities." *Buckeye Power, Inc. v. Am. Transmission Sys.*, 148 FERC ¶ 61,174, 61,968-69 (2014). The party challenging the rate has the "burden of showing that the existing rate is unjust or unreasonable." *Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1009 (D.C. Cir. 2022) (citing 16 U.S.C. § 824e(b)).

The dispute in this case concerns whether rolled-in rate treatment is appropriate to fund Public Service's $1.7 billion Power Pathway project. The Power Pathway is a new transmission system designed to integrate renewable energy resources. Public Service announced that, to pay for the Power Pathway, it would raise rates charged to customers, including the Colorado Cities.

The Colorado Cities contested the rate increase in a complaint filed with FERC. They argued that it was "unjust and unreasonable" for Public Service to require them to help fund the Power Pathway because they would not have "direct connections" to the Power Pathway and "ha[d] already transitioned to renewable resources." J.A. 425, 429-30 (citation omitted). The Colorado Cities further alleged that the proposed rate increase was unfair because "multiple other

beneficiaries . . . [we]re not allocated costs." J.A. 428. FERC denied the complaint. FERC found that "[Public Service's] transmission system operates as an integrated network," and the "Power Pathway will become part of that network." J.A. 445. Thus, FERC explained that, "[g]iven a finding that the system operates as an integrated whole, transmission costs have generally been rolled-in, absent a finding of special circumstances." *Id.* (citation omitted). FERC acknowledged that the Colorado Cities believed special circumstances should exempt them from rolled-in rate treatment, but FERC concluded that there were no special circumstances in play in this situation.

The Colorado Cities timely petitioned for rehearing. They argued that FERC's rejection of their alleged special circumstances was arbitrary and capricious. FERC denied the petition for rehearing. It explained that the petition for rehearing "essentially repeat[ed] contentions in the[] Complaint," which FERC "addressed in the [initial] Order." J.A. 492. The Colorado Cities now petition for review by this court, asserting, first, that FERC did not find that Public Service operated as an integrated system, and second, that FERC did not find whether special circumstances existed.

## II. ANALYSIS

### A.

We dismiss the Colorado Cities' first challenge to FERC's orders – namely, that FERC failed to make a required finding that the Power Pathway is part of an integrated system – because this challenge was never properly raised with FERC in the first instance.

Under 16 U.S.C. § 825*l*(b), "[n]o objection to the order of [FERC] shall be considered by the [reviewing] court unless such objection shall have been urged before [FERC] in the application for rehearing unless there is reasonable ground for failure so to do." So "parties seeking judicial review of [FERC's] orders under the Federal Power Act must 'first petition for rehearing of those orders and must themselves raise in that petition all of the objections urged on appeal.'" *Ameren Servs. Co. v. FERC*, 893 F.3d 786, 793 (D.C. Cir. 2018) (citation omitted). Arguments must be raised "with 'specificity'" and "may not be preserved either 'indirectly' or 'implicitly.'" *Id.* (citations omitted). This requirement "is jurisdictional," and "we have no discretion to disregard it." *Entergy Ark., LLC v. FERC*, 109 F.4th 583, 590 (D.C. Cir. 2024) (citation omitted).

The Colorado Cities' petition for rehearing filed with FERC never claimed that FERC's order was arbitrary and capricious because FERC failed to find that the Power Pathway was part of an integrated system. Indeed, this specific challenge to FERC's decision is nowhere mentioned in the petition for rehearing. The Colorado Cities' only response is that their petition for rehearing alleged that FERC's order was "inconsistent with cost causation principles . . . [,] otherwise unjust and unreasonable, [and] arbitrary, capricious, and not the product of reasoned decision-making." Pet'r's Reply Br. 2 (quoting J.A. 477-78). But this is not enough to satisfy the statutory requirements of § 825*l*(b). We have made it clear that the exhaustion requirement is "unusually strict" and requires that a petition for rehearing "alert[] [FERC] to the legal arguments" that will be made on appeal. *Entergy Ark.*, 109 F.4th at 591 (first alteration in original) (citation omitted).

Nothing about the Colorado Cities' generalized allegation that FERC acted contrary to the cost causation principle or arbitrarily and capriciously in some other way alerted FERC to a claim that its order was allegedly deficient for the specific reason that FERC failed to find that the Power Pathway was part of an integrated system. The Colorado Cities do not argue that they had "reasonable grounds" for failing to raise this challenge in the petition for rehearing. Therefore, our analysis of this issue is straightforward: we do not have jurisdiction to consider it, and we must dismiss this aspect of the Colorado Cities' petitions for review.

B.

The Colorado Cities did properly raise their second challenge – namely, that FERC "made no findings regarding special circumstances" that could potentially justify departing from rolled-in rate treatment. Pet'r's Br. 16-17 (emphasis removed). "We review FERC orders under the Administrative Procedure Act's arbitrary, capricious, or contrary to law standard." *PG&E v. FERC*, 113 F.4th 943, 947 (D.C. Cir. 2024). This requires us to "assess whether FERC provided a reasoned explanation for its decision and whether the order is in accordance with the law." *Id.*

The Colorado Cities do not argue that FERC's findings as to special circumstances were inadequately supported or unreasonable. Instead, they dispute whether there were any findings at all as to two sets of alleged "special circumstances": (1) that the Colorado Cities will not benefit from the Power Pathway, and (2) that the increased charges levied on affected parties were not commensurate with the benefits received. We find no merit in these claims. FERC directly addressed both circumstances that the Colorado Cities say should exempt them from rolled-in rate treatment, finding that neither was a qualifying "special circumstance."

*First*, FERC acknowledged but rejected the Colorado Cities' contention that rolled-in rate treatment is inappropriate because they will not benefit from the Power Pathway. The Colorado Cities claim that FERC "failed to make any finding regarding whether [two pieces of] evidence constituted . . . special circumstance[s]": (1) the Colorado Cities' physical remoteness from the regions targeted by the Power Pathway, and (2) the Colorado Cities' achievement of "most or all of the carbon reduction benefits alleged to be provided by [the] Power Pathway." Pet'r's Br. 17-21. FERC actually addressed both matters and "disagree[d] that these factors make the benefits unlikely to reach [the] Colorado Cities." J.A. 446. FERC also observed that the Colorado Cities "provide no evidence to show that they are disconnected from [Public Service's] network and therefore will not benefit from [the] Power Pathway." J.A. 445.

FERC found that the Colorado Cities would benefit from the Power Pathway despite their geographical distance and existing renewable energy sources. FERC concluded that the Power Pathway would bring the Colorado Cities "reliability benefits," like the "improved ability to deliver electricity . . . , reduced need for reserve capacity, and increased diversity of resources on [Public Service's] system," "resilience benefits," like the "improved ability of the transmission system to withstand and recover from major system disruptions through enhanced redundancy," "economic benefits," like "reduced production costs" and "increased import and export capacity . . . which drives down the costs of delivered power," "reduced reserve requirements," and

4

"generation access benefits." J.A. 445 n.114; *see also* J.A. 493-94. Far from failing to make any finding about the Colorado Cities' alleged lack of benefits from the Power Pathway, FERC actually addressed the Colorado Cities' contentions head-on before concluding that the "Colorado Cities will benefit from the network upgrades that constitute [the] Power Pathway," which makes "rolled-in rate treatment . . . consistent with the cost causation principle." J.A. 447.

*Second*, FERC responded to the Colorado Cities' assertion that the cost of the Power Pathway was not allocated based on the relative share of benefits received, in particular because some parties would benefit from the Power Pathway without helping to fund it. FERC expressly found that the Colorado Cities did not carry their burden of showing that the cost allocation violated the requirement that charges "reflect to some degree the costs actually caused by the customer who must pay for them." J.A. 446 (citation omitted). To make this finding, FERC did not credit the Colorado Cities' contention that the Power Pathway would benefit entities outside of Public Service's distribution service. FERC explained that the "Power Pathway is a transmission project located entirely within the [Public Service] retail distribution service territory." J.A. 447. Therefore, the Power Pathway was ineligible for a cost allocation program that went beyond Public Service's distribution system. *Id.*; *see also* J.A. 495. And, as explained, FERC found that the Colorado Cities would benefit from the Power Pathway. Furthermore, FERC explained that, even if it were to credit the "Colorado Cities' hypothetical example of an entity enjoying benefits . . . that are disproportionate to its share of [the] total system load," "[a]ll network customers pay for the entire integrated transmission network and not only for particular parts of that network," and a "customer-by-customer evaluation" of cost allocation is not appropriate. J.A. 495-96. Again, contrary to the Colorado Cities' assertion that FERC "failed to make any finding regarding whether . . . evidence of [the] Power Pathway's economic benefits flowing not to [the] Colorado Cities but to others constituted a special circumstance," Pet'r's Br. 23, FERC evaluated the Colorado Cities' arguments and found that there was no special circumstance justifying a departure from rolled-in rate treatment.

In sum, on the record before us, we reject the Colorado Cities' claim that FERC "made no findings regarding special circumstances." *Id.* at 17 (emphasis removed).

\* \* \*

For the reasons given, we dismiss in part and deny in part the Colorado Cities' petitions for review. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold the mandate until seven days after a timely petition for panel or *en banc* rehearing is resolved. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

                        **FOR THE COURT:**
                        Clifton B. Cislak, Clerk

BY:     /s/
                Daniel J. Reidy
                Deputy Clerk